IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE AMY ST. EVE

CHICAGO LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW, INC.,

        Plaintiff,

        v.

CRAIGSLIST, INC.,

        Defendant.

**06C 0657**

CASE NO. **MAGISTRATE JUDGE COLE**

COMPLAINT FOR MONETARY,
DECLARATORY & INJUNCTIVE
RELIEF; DEMAND FOR JURY
TRIAL

**FILED**

J.N

FEB X 3 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

## I. NATURE OF THE CASE

1. This action seeks monetary, declaratory, and injunctive relief against Defendant craigslist, Inc., for publishing notices, statements, or advertisements with respect to the sale or rental of dwellings that indicate (1) a preference, limitation, or discrimination on the basis of race, color, religion, sex, familial status, or national origin; and (2) an intention to make a preference, limitation, or discrimination on the basis of race, color, religion, sex, familial status, or national origin. This action is brought pursuant to the federal Fair Housing Act, 42 U.S.C. § 3604(c).

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that the claims alleged herein arise under the laws of the United States, and 28 U.S.C. § 1332, in that Plaintiff and Defendant are citizens of different states, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391 because the events or omissions giving rise to these claims occurred in this district, and Defendant conducts business in this district.

4. This Court has authority to grant declaratory and injunctive relief as well as compensatory and punitive damages pursuant to 42 U.S.C. §§ 3612(o)(3), 3613(c)(1), and 28 U.S.C. §§ 2201–2. The Court also has the authority to award reasonable attorneys' fees and costs to a prevailing party pursuant to 42 U.S.C. § 3613(c)(2).

## III. PARTIES

5. Plaintiff Chicago Lawyers' Committee for Civil Rights Under Law, Inc. (CLC), is an Illinois non-profit organization with its principal place of business located at 100 North LaSalle Street, Suite 600, Chicago, Illinois 60602. The CLC's mission is to promote and protect civil rights, particularly the civil rights of the poor, ethnic minorities, and the disadvantaged. The CLC strives to eliminate discriminatory housing practices by: (1) educating people about their rights under the fair housing and fair lending laws; (2) investigating complaints of fair housing discrimination; (3) providing referral information for non-discrimination housing matters; (4) advocating on a wide range of housing related issues, such as public housing, increased affordable housing, and fair and equal mortgage lending opportunities; and (5) providing free legal services to individuals and groups who wish to exercise their fair housing rights and secure equal housing opportunities.

6. Upon information and belief, Defendant craigslist, Inc., is a Delaware corporation located at 1381 9th Avenue, San Francisco, California 94122, and created in connection with online advertising of housing sale and rental opportunities.

## IV. FACTS

### A. Introduction

7. Defendant craigslist, Inc., operates a website accessible at "chicago.craigslist.org," which is titled "craigslist: chicago classifieds for jobs, apartments, personals, for sale, services,

community," as a means of posting or advertising housing sale or rental opportunities. Defendant's website contains a website link titled "post to classifieds."

     8. The website link titled "post to classifieds," opens a new webpage located at "post.craigslist.org/chi," titled "chicago craigslist posting." At this webpage, Defendant's website categorizes posts and advertisements and titles website links as the following: (1) "job"; (2) "gigs"; (3) "housing"; (4) "for sale / wanted"; (5) "resume"; (6) "services offered"; (7) "personal / romance"; (8) "community"; and (9) "event." This webpage also contains website links titled "log in to your account," and "Apply for Account."

     9. The website link titled "housing," opens a new webpage located at "post.craigslist.org/chi/H," titled "chicago craigslist posting > housing." At this webpage, Defendant's website categorizes posts and advertisements and titles website links as the following: (1) "I am offering housing"; and (2) "I need housing." This webpage also contains website links titled "log in to your account" and "Apply for Account."

     10. The website link titled "I am offering housing," opens a new webpage located at "post.craigslist.org/chi/H?want=n," also titled "chicago craigslist posting > housing." At this webpage, Defendant's website states that an "ad will expire in 7 days." Additionally, Defendant's website categorizes posts and advertisements and titles website links as the following: (1) "rooms & shares"; (2) "apartments for rent"; (3) "housing swap"; (4) "office & commercial"; (5) "parking & storage"; (6) "real estate for sale"; (7) "sublets & temporary"; and (8) "vacation rentals." Accessing any of these website links opens a new webpage making available suggested and "[r]equired" fields which comprise the content of the post or advertisement. These content fields list rent or price, specific and general location, the title of the advertisement, a contact email address, and a description with the capability to add pictures. Moreover, the webpage lists the option to "anonymize[]" a contact email address with a newly-assigned and unique email address using the domain name "craigslist.org." This webpage also contains website links titled "log in to your account," and "Apply for Account."

11. The website link titled "I need housing," opens a new webpage located at "post.craigslist.org/chi/H?want=y," also titled "chicago craigslist posting > housing." At this webpage, Defendant's website states that an "ad will expire in 7 days." In addition, Defendant's website categorizes posts and advertisements and titles website links as the following: (1) "apts wanted"; (2) "real estate wanted"; (3) "room/share wanted"; and (4) "sublet/temp wanted." Accessing any of these website links opens a new webpage making available suggested and "[r]equired" fields that comprise the content of the post or advertisement. The content fields list rent or price, specific and general location, the title of the advertisement, a contact email address, and a description with the capability to add pictures. Further, the webpage lists the option to "anonymize[]" a contact email address with a newly-assigned and unique email address using the domain name "craigslist.org." This webpage also contains website links titled "log in to your account," and "Apply for Account."

12. The website link titled "log in to your account," opens a new webpage located at either "accounts.craigslist.org/login?rt=P&rp=/chi," "accounts.craigslist.org/login?rt=P&rp=/chi/H?want=y," or "accounts.craigslist.org/login?rt=P&rp=/chi/H?want=n," titled "craigslist: account log in," that lists an "Email / Handle" field and a "Password" field so that those with "craigslist accounts" may access saved prior content and information. The webpage also lists an "accounts@craigslist.org" email address so individuals may seek account assistance from Defendant's employees if necessary.

13. The website link titled "Apply for Account," opens a new webpage located at "accounts.craigslist.org/login/signup," titled "craigslist: account signup," that directs individuals to type a five-letter verification word, provide a contact email address, and click on a button to "create account" so that prior content and information may be saved and accessed later.

14. When home-seekers are interested in sale or rental housing opportunities advertised on Defendant's website, the necessary contact information is obtained from content published on Defendant's website.

15.  Upon information and belief, Defendant craigslist, Inc., has previously been sued for publishing discriminatory housing advertisements on its website without endeavoring to prevent such advertisements.  Defendant settled those cases.  Defendant is thus fully aware of its obligations under the Fair Housing Act.

**B. Discriminatory Housing Advertisements Published on Defendant's Website**

**1. Discriminatory Advertisements on the Basis of Race**

16.  Defendant publishes housing advertisements on its website that indicate a preference, limitation, or discrimination, or an intention to make a preference, limitation, or discrimination, on the basis of race.  Such advertisements discourage or prohibit home-seekers from responding to those advertisements and thus decrease the number of units available to them.

17.  At least on July 6, 2005, Defendant's website published a rental advertisement containing the statement "African Americans and Arabians tend to clash with me so that won't work out."

18.  At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Neighborhood is predominantly Caucasian, Polish and Hispanic."

19.  At least on January 12, 2006, Defendant's website published a rental advertisement containing the statement "NO MINORITIES."

**2. Discriminatory Advertisements on the Basis of Color**

20.  Defendant publishes housing advertisements on its website that indicate a preference, limitation, or discrimination, or an intention to make a preference, limitation, or discrimination, on the basis of color.  Such advertisements discourage or prohibit home-seekers from responding to those advertisements and thus decrease the number of units available to them.

21.  At least on July 29, 2005, Defendant's website published a housing advertisement containing the statement "Non-Women of Color NEED NOT APPLY."

**3. Discriminatory Advertisements on the Basis of National Origin**

22.  Defendant publishes housing advertisements on its website that indicate a preference, limitation, or discrimination, or an intention to make a preference, limitation, or discrimination,

on the basis of national origin. Such advertisements discourage or prohibit home-seekers from responding to those advertisements and thus decrease the number of units available to them.

23. At least on July 6, 2005, Defendant's website published a rental advertisement containing the statement "African Americans and Arabians tend to clash with me so that won't work out."

24. At least on July 15, 2005, Defendant's website published a housing advertisement containing the statement "looking for gay latino."

25. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Neighborhood is predominantly Caucasian, Polish and Hispanic."

26. At least on August 3, 2005, Defendant's website published a rental advertisement containing the statement "This is not in a trendy neighborhood - very Latino."

27. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "The neighborhood is probably what you've heard...predominantly hispanic, but changing slowly."

28. At least on September 6, 2005, Defendant's website published a rental advertisement containing the statement "All in a vibrant southwest Hispanic neighborhood offering great classical Mexican culture, restaurants and businesses."

**4. Discriminatory Advertisements on the Basis of Sex**

29. Defendant publishes housing advertisements on its website that indicate a preference, limitation, or discrimination, or an intention to make a preference, limitation, or discrimination, on the basis of sex. Such advertisements discourage or prohibit home-seekers from responding to those advertisements and thus decrease the number of units available to them.

30. At least on July 13, 2005, Defendant's website published a rental advertisement containing the statement "Requirements: Clean Godly Christian Male."

31. At least on August 16, 2005, Defendant's website published a sublet advertisement containing the statement "This is what I am looking for . . . and the more a candidate has, the less I will ask in rent: Female Christian."

32. At least on August 17, 2005, Defendant's website published a housing advertisement containing the statement "Christian single straight female needed."

33. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "Owner lives on the first floor, so tenant must be respectful of the situation, preferrably not 2 guys in their mid twenties who throw parties all the time."

34. At least on January 16, 2006, Defendant's website published a rental advertisement containing the statement "LADIES PLEASE RENT FROM ME."

**5. Discriminatory Advertisements on the Basis of Religion**

35. Defendant publishes housing advertisements on its website that indicate a preference, limitation, or discrimination, or an intention to make a preference, limitation, or discrimination, on the basis of religion. Such advertisements discourage or prohibit home-seekers from responding to those advertisements and thus decrease the number of units available to them.

36. At least on July 13, 2005, Defendant's website published a rental advertisement containing the statement "Requirements: Clean Godly Christian Male."

37. At least on August 2, 2005, Defendant's website published a rental advertisement containing the statement "The neighborhood is Orthodox Jewish for the most part with temples close by."

38. At least on August 16, 2005, Defendant's website published a sublet advertisement containing the statement "This is what I am looking for . . . and the more a candidate has, the less I will ask in rent: Female Christian."

39. At least on August 17, 2005, Defendant's website published a housing advertisement containing the statement "Christian single straight female needed."

40. At least on August 19, 2005, Defendant's website published a rental advertisement containing the statement "Only Muslims apply."

41. At least on August 23, 2005, Defendant's website published a rental advertisement containing the statement "near St Gertrudes church."

42. At least on August 29, 2005, Defendant's website published a rental advertisement containing the statement "Great for 2- couples . . . . temple next door."

43. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "Walk to shopping, restaurants, coffee shops, synagogue."

44. At least on September 6, 2005, Defendant's website published a housing advertisement containing the statement "Muslim preferred."

45. At least on September 6, 2005, Defendant's website published a rental advertisement containing the statement "Near transp.,shopping, church."

46. At least on September 8, 2005, Defendant's website published a rental advertisement containing the statement "temple next door."

47. At least on September 23, 2005, Defendant's website published a rental advertisement containing the statement "The entire building is filled with interesting and fun people. Mostly Loyola Students. . . . . Church immediately across from building."

48. At least on September 23, 2005, Defendant's website published a rental advertisement containing the statement "very quiet street opposite church."

49. At least on September 23, 2005, Defendant's website published a rental advertisement containing the statement "Within walking distance to transportation, shopping, church."

50. At least on September 23, 2005, Defendant's website published a rental advertisement containing the statement "Accesible to transportation, church ST Margareth."

51. At least on September 23, 2005, Defendant's website published a rental advertisement containing the statement "Great for a family, great for adult acting roommates. . . . . perfect for family or roommates. . . . . St. bens Catholic Church is one block away."

52. At least on September 23, 2005, Defendant's website published a rental advertisement containing the statement "Across from the Catholic Church."

53. At least on September 29, 2005, Defendant's website published a rental advertisement containing the statement "ACROSS FROM ST MARY'S CHURCH."

54. At least on October 25, 2005, Defendant's website published a rental advertisement containing the statement "Catholic Church, and beautiful Buddhist Temple within one block."

55. At least on October 25, 2005, Defendant's website published a rental advertisement containing the statement "Christian owners. Students, families welcome."

56. At least on October 25, 2005, Defendant's website published a rental advertisement containing the statement "The house is perfect for a family and there is a church right across the street."

57. At least on October 25, 2005, Defendant's website published a rental advertisement containing the statement "next to St. Gregory's church."

58. At least on October 25, 2005, Defendant's website published a rental advertisement containing the statement "Walk to shopping, restaurants, coffee shops, synagogue."

## 6. Discriminatory Advertisements on the Basis of Familial Status

59. Defendant publishes housing advertisements on its website that indicate a preference, limitation, or discrimination, or an intention to make a preference, limitation, or discrimination, on the basis of familial status. Such advertisements discourage or prohibit home-seekers from responding to those advertisements and thus decrease the number of units available to them.

60. At least on July 20, 2005, Defendant's website published a rental advertisement containing the statement "Apt. too small for families with small children."

61. At least on July 20, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for 4 Med students."

62. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for young couples and students with or without transportation."

63. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Perfect place for city single."

64. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Great for students, young professionals or a couple w/ pets."

65. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Suitable for single person preferable."

66. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Are you a single person who needs to live near public transportation."

67. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "absolutely ideal for a young professional and socialite!"

68. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Great apartment for medical students, grad students, and young professionals."

69. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for young couples."

70. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "adults preferred."

71. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Ideal for roomates or single person. Sorry, no kids, no pets."

72. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "Great for students or single adult(s)."

73. At least on July 21, 2005, Defendant's website published a rental advertisement containing the statement "great for a single young professional or a couple."

74. At least on July 25, 2005, Defendant's website published a sublet advertisement containing the statement "Apartment is situated on 8th floor of building teeming with young people. It is unfurnished but ideal for a student or young single professional."

75. At least on July 25, 2005, Defendant's website published a sublet advertisement containing the statement "the IDEAL location for a student or young professional."

76. At least on July 25, 2005, Defendant's website published a sublet advertisement containing the statement "this is a place for a single person. very spacious for a single person, too small for a couple."

77. At least on July 26, 2005, Defendant's website published a rental advertisement containing the statement "Ideal for young person just starting out."

78. At least on July 28, 2005, Defendant's website published a rental advertisement containing the statement "Master Bedroom Huge with adjacent room for . . . baby."

79. At least on July 28, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for Young Family Or 2 Broke ASS Roommates."

80. At least on August 1, 2005, Defendant's website published a sublet advertisement containing the statement "perfect for students and young professionals."

81. At least on August 1, 2005, Defendant's website published a rental advertisement containing the statement "young cool landlord who wants one nice quiet [sic] person to rent her basement."

82. At least on August 2, 2005, Defendant's website published a rental advertisement containing the statement "Non-smoking adults preferred."

83. At least on August 2, 2005, Defendant's website published a rental advertisement containing the statement "Prefer quiet one or two person household."

84. At least on August 2, 2005, Defendant's website published a rental advertisement containing the statement "Preferred renter will be: Young couple with/out children Young couple with 1 or 2 children or Older couple."

85. At least on August 2, 2005, Defendant's website published a rental advertisement containing the statement "available immediately to a mature individual."

86. At least on August 2, 2005, Defendant's website published a rental advertisement containing the statement "I will only allow single occupancy."

87. At least on August 5, 2005, Defendant's website published a rental advertisement containing the statement "Pet and kid friendly. Grads or professionals preferred."

88. At least on August 11, 2005, Defendant's website published a rental advertisement containing the statement "Perfect college apartment or young single."

89. At least on August 11, 2005, Defendant's website published a rental advertisement containing the statement "I prefer to rent to other graduate students, especially students in the professional schools."

90. At least on August 12, 2005, Defendant's website published a rental advertisement containing the statement "Quiet building is home for a few young professionals & students."

91. At least on August 15, 2005, Defendant's website published a rental advertisement containing the statement "I will only allow single occupancy in the apartment."

92. At least on August 15, 2005, Defendant's website published a rental advertisement containing the statement "Great apartment for graduate students . . . , married couple, small family."

93. At least on August 15, 2005, Defendant's website published a rental advertisement containing the statement "Suitable for single individual only."

94. At least on August 18, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for the single graduate student."

95. At least on August 18, 2005, Defendant's website published a rental advertisement containing the statement "terrific 16 unit young professional building."

96. At least on August 18, 2005, Defendant's website published a rental advertisement containing the statement "ADULTS PREFERRED."

97. At least on August 18, 2005, Defendant's website published a rental advertisement containing the statement "great social young professional's highrise."

98. At least on August 18, 2005, Defendant's website published a rental advertisement containing the statement "Young professionals in other units in building."

99. At least on August 18, 2005, Defendant's website published a rental advertisement containing the statement "Young couple sought for mobile [sic] home in western suburbs."

100. At least on August 18, 2005, Defendant's website published a rental advertisement containing the statement "mostly young professional residents who are very friendly (same for building neighbors)."

101. At least on August 19, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for a single person."

102. At least on August 19, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for single professionals and couples."

103. At least on August 19, 2005, Defendant's website published a rental advertisement containing the statement "Outstanding young professional building."

104. At least on August 23, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for graduate students or young professionals as are the other building tenants."

105. At least on August 23, 2005, Defendant's website published a rental advertisement containing the statement "We are looking for a single quiet professional."

106. At least on August 23, 2005, Defendant's website published a rental advertisement containing the statement "Quiet building with married couples in other units."

107. At least on August 23, 2005, Defendant's website published a rental advertisement containing the statement "Non-smoking adults preferred."

108. At least on August 23, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for graduate students or young professional."

109. At least on August 23, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for young couples."

110. At least on August 24, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for a single person or a couple."

111. At least on August 25, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for one person!"

112. At least on August 25, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for young party types with good jobs or family."

113. At least on August 29, 2005, Defendant's website published a rental advertisement containing the statement "adult 2 flat bldg."

114. At least on August 29, 2005, Defendant's website published a rental advertisement containing the statement "perfect for either one or two people. University of Chicago student, postdoc, faculty member preferred."

115. At least on August 29, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for the single who likes living in luxury."

116. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "Amazing Young Professional intimate 16 unit building."

117. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "Ideal for two graduate students or a couple. . . . . Tenants are mostly Grad students or Professionals."

118. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "young professional neighbors."

119. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "Great for young professionals!"

120. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "Apt. too small for families with small children."

121. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "ideal tenant would be a single person (rent would be adjusted in this case), a couple (rent can be adjusted)."

122. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "Works for single or couples."

123. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "Terrific young professional building."

124. At least on September 1, 2005, Defendant's website published a rental advertisement containing the statement "Apartments are perfect for students, graduates, and young professional."

125. At least on September 6, 2005, Defendant's website published a rental advertisement containing the statement "This is a fantastic apartment for a young professional."

126. At least on September 6, 2005, Defendant's website published a rental advertisement containing the statement "great apartment for a young person. . . . . this apartment is good for someone who wants to live alone and who is not a yuppy."

127. At least on September 8, 2005, Defendant's website published a rental advertisement containing the statement "ideal for nice, quiet young couple, professionals, serious, quiet students etc."

128. At least on September 8, 2005, Defendant's website published a rental advertisement containing the statement "2nd floor good for a single prof. person."

129. At least on September 8, 2005, Defendant's website published a rental advertisement containing the statement "No pets, no kids."

130. At least on September 8, 2005, Defendant's website published a rental advertisement containing the statement "No pets, non-smoking adults preferred."

131. At least on September 23, 2005, Defendant's website published a rental advertisement containing the statement "no children, no smokers, and no pets."

132. At least on September 23, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for young couple."

133. At least on September 23, 2005, Defendant's website published a rental advertisement containing the statement "Landlord expects someone very respectable, quiet – absolutely [sic] no smokers, and no parties, prefers someone who does not have a lot of guests, and no children."

134. At least on September 23, 2005, Defendant's website published a rental advertisement containing the statement "No children."

135. At least on September 26, 2005, Defendant's website published a rental advertisement containing the statement "Perfect for young couple, roomies or bachelor/ette."

136. At least on September 29, 2005, Defendant's website published a rental advertisement containing the statement "Excellent place for a single, or couple."

137. At least on September 29, 2005, Defendant's website published a rental advertisement containing the statement "NO CHILDREN UNDER THE AGE OF 6 CAN BE ACCEPTED."

138. At least on September 29, 2005, Defendant's website published a rental advertisement containing the statement "ideal for a couple or single."

139. At least on October 10, 2005, Defendant's website published a rental advertisement containing the statement "no children."

140. At least on October 25, 2005, Defendant's website published a rental advertisement containing the statement "Ideal for a couple or young professionals."

141. At least on October 25, 2005, Defendant's website published a rental advertisement containing the statement "No pets and kids."

## C. Plaintiff CLC's Resource Diversion, Investigation, and Mission Frustration

142. Plaintiff CLC has diverted significant resources, such as time and money, away from its fair housing program to efforts directed at Defendant's publication of discriminatory housing advertisements on its website. Because the CLC was and continues to be short-staffed, the time and money it spends to identify, investigate, and address Defendant's publication of discriminatory housing advertisements on its website constitutes valuable time and resources it diverts from its fair housing program.

143. Plaintiff CLC has investigated and continues to monitor Defendant's website for discriminatory housing advertisements.

144. Plaintiff CLC has increased the depth and scope of its fair housing training to include information about discriminatory advertisements in response to the findings of its investigation of Defendant.

145. Plaintiff CLC has made and continues to make other fair housing agencies aware of both the problem and effect of discriminatory advertisements as a result of its investigation of Defendant.

146. Plaintiff CLC has investigated and devoted its scarce resources, including the time of staff attorneys and law interns and legal research, to a possible lawsuit against Defendant.

147. But for the significant resources Plaintiff CLC has expended to investigate Defendant's publication of discriminatory advertisements on its website, the CLC would have spent additional time and money on projects such as, but not limited to, the following: (1) increasing the depth and scope of its fair housing education, outreach, and testing programs; (2) building and maintaining alliances with other fair housing organizations; (3) investigating and educating the public on the civil rights implications of rescue fraud and predatory lending; (4) investigating discrimination in print advertising; (5) conducting Section 8 outreach, education, and training; (6) monitoring the Chicago Housing Authority's efforts, pursuant to a Settlement Agreement, to relocate individuals out of public housing and into non-segregated housing; (7) drafting and commenting on fair housing and fair lending legislation; and (8) enhancing the fair housing section of the CLC's website.

148. Defendant's publication of discriminatory advertisements on its website has frustrated and continues to frustrate Plaintiff CLC's mission to achieve fair and open housing.

149. Defendant's publication of discriminatory advertisements on its website undermines Plaintiff CLC's educational efforts because the advertisements misinform home-seekers as to what is and is not illegal. Defendant's publication of discriminatory housing advertisements on its website may have the effect of sanctioning and normalizing discrimination in the sale or rental of housing because the public becomes accustomed to seeing such illegal advertisements.

150. Defendant's publication of discriminatory advertisements on its website stymies Plaintiff CLC's education and outreach efforts because many of the advertisements published on Defendant's website make landlord contact information anonymous because of the newly-assigned and unique email addresses using the "craigslist.org" domain, thereby making it

difficult or impossible for the CLC to contact and educate the prospective tenants and landlords whose advertisements are published by Defendant.

151. Defendant's publication of discriminatory advertisements on its website hinders Plaintiff CLC's mission of facilitating sale or rental housing opportunities because the discriminatory content of the advertisements published on Defendant's website discourages home-seekers in federally-protected classes and decreases the number of units available to them.

## V. CLAIM FOR RELIEF—Fair Housing Act, 42 U.S.C. § 3604(c)

152. Plaintiff CLC incorporates by reference each and every allegation contained in paragraphs 1 through 151 above.

153. Defendant craigslist, Inc., published notices, statements, or advertisements with respect to the sale or rental of dwellings, in violation of 42 U.S.C. § 3604(c), that indicated (1) preferences, limitation, or discrimination based on race, color, religion, sex, familial status, or national origin; or (2) an intention to make preferences, limitation, or discrimination based on race, color, religion, sex, familial status, or national origin.

## VI. PRAYER FOR RELIEF

Plaintiff CLC prays this Court enter judgment as follows:

1. Declare that Defendant's actions and practices, as set forth above, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.*

2. Enjoin Defendant, and its agents, employees, successors, and all other persons in active concert or participation with Defendant, from continuing to publish discriminatory advertisements that state preferences against any class of persons protected under the fair housing laws.

3. Require Defendant to develop a non-discrimination policy that states, at a minimum, all submissions to its website are subject to federal fair housing laws making it unlawful to indicate in any advertisement "any preference, limitation, or discrimination based on race, color, religion, sex, family status, and national origin," to state that submissions to local webpages must

abide by applicable local fair housing laws, and to set forth examples of prohibited language as part of the non-discrimination policy.

4. Require Defendant to post a short statement summarizing its non-discrimination policy and the requirements of the federal fair housing laws as a footer on each webpage and to post information about applicable local fair housing laws on local webpages.

5. Require Defendant to include a short statement on federal fair housing laws in emails relating to advertisements on its website and to include information about applicable local fair housing laws on local webpages.

6. Require Defendant to include the phrase "Equal Housing Opportunity" and the fair housing logo on all print or online advertisements, print or online correspondence, and other written materials.

7. Require Defendant to report to the U.S. Department of Housing and Urban Development and Plaintiff CLC any individual or entity seeking to post a discriminatory housing advertisement on its website.

8. Require Defendant to provide website links referring individuals to the U.S. Department of Housing and Urban Development and Plaintiff CLC for additional information regarding housing discrimination or to register related concerns.

9. Require Defendant to delete accounts and prevent website access to individuals who post or attempt to post discriminatory housing advertisements on its website.

10. Require Defendant to implement screening software to preclude discriminatory advertisements from being published on Defendant's website.

11. Require Defendant to provide National Fair Housing Alliance or U.S. Department of Housing and Urban Development training to all pertinent employees.

12. Require Defendant to pay Plaintiff CLC reasonable attorneys' fees and expenses in monitoring Defendant's website to ensure compliance with the fair housing laws.

13. Require Defendant to develop with other fair housing organizations a fund to outreach and educate housing providers, counselors, agencies, neighborhood centers, and individuals on the rights and prohibitions under the fair housing laws.

14. Award Plaintiff CLC reasonable attorneys' fees and costs, actual damages, compensatory damages, punitive damages, and any such damages as may be allowed under the federal Fair Housing Act in amounts to be proved at trial.

15. Award all such other relief as the Court deems just and proper.

## VII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial.

Respectfully submitted,

Stephen D. Libowsky
Howrey LLP
321 North Clark Street, Suite 3400
Chicago, Illinois 60610
(312) 595-1239

Laurie Wardell
Elyssa Balingit Winslow
Chicago Lawyers' Committee for Civil Rights
Under Law, Inc.
100 North LaSalle Street, Suite 600
Chicago, Illinois 60602
(312) 630-9744

Attorneys for Plaintiff
Plaintiff Chicago Lawyers' Committee for Civil
Rights Under Law, Inc.

Dated: February 3, 2006